

**UNITED AFRICAN-ASIAN ABILITIES CLUB**
*Florida: 5335 Falling Water Dr. Orlando, FL 32818*
*California:  515 P St., #207 Sacramento, CA 95814*
*P: 619-866-4576  *  F: (916) 330-3339*

### Accessibility Auxiliary Aid, Program, Service, Rules, Practices, Policy And Reasonable Modification Report

I.   **Preliminary Statement And Caveats**

The United African Asian Abilities Club and Lightning Law, APC requested that this access report be prepared as part of the initial complaint filed with the Court.   It is the understanding of the author of this report that the United African Asian Abilities Club and Lightning Law, APC conducted a site inspection of the property before the complaint was filed. The United African Asian Abilities Club and Lightning Law, APC provided the author of this report with the photographs that were taken during the site inspection.  This report is only a preliminary report.  The author of this report may or may not be the expert for the purposes of a motion for summary judgment or a jury trial.


**Property Information:**   GRMR, LTD., A CALIFORNIA LIMITED PARTNERSHIP
**Property Location:**       1412 Nisson Road Tustin, CA 92780
**Property Parcel No.:**     432-041-13

II.   **Qualification**

EVIDENCE CODE SECTION 720 – 723.  720.  (a) A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates. Against the objection of a party, such special knowledge, skill, experience, training, or education must be shown before the witness may testify as an expert.   (b) A witness' special knowledge, skill, experience, training, or education may be shown by any otherwise admissible evidence, including his own testimony.


III.   **Reasonable Modification Investigation And The Findings Of The On-Site Investigator**

**Under FHAA and ADA barriers can be addressed by the reasonable accommodation and reasonable modification rules. Prospective renters with disabilities desire to live in accessible housing. It makes no sense for them to complete a rental application without first investigating the access of the apartments and making FHAA requests.**

**In this case, Plaintiff Club investigated the subject apartments and found barriers. These barriers limit the enjoyment of the apartments.**

**In this case, the first FHAA issue is receiving and processing FHAA requests. Defendants have an affirmative duty to have a process for responding to said requests. Plaintiffs sent said requests to the public street and email addresses.**

**On November 24, 2019 and January 6, 2020, Plaintiffs attempted to make a request at the property for reasonable accommodation and reasonable modification.  On February 29, 2020, Plaintiffs also made their reasonable accommodation and modification request to Defendants in an email.  Finally, in February, 2020, Plaintiffs mailed a letter to Defendants that made a request for reasonable accommodation and reasonable modification. No one responded as of the date of the filing of the Civil Complaint.**

The UAAAC investigator went to the property for UAAAC member to determine if UAAAC member could live at the apartments. The investigator found the following:

Plaintiff Club member went to Defendant's apartment facilities at the Property in November, 2019, and a second time in January, 2020, to access the rental services.  The Named Individual Plaintiff has actual knowledge of Defendants' overt and obvious physical barriers, that relate to this Plaintiff's disabilities, to Defendants' Property on-site office that provides rental services that this Named Individual Plaintiff intended to visit in November, 2019, and a second time in January, 2020, but this Plaintiff was deterred from accessing Defendant's rental services at the office located on the Property.  Defendants provide rental information, rental applications, and other rental services at the on-site office.  Defendants' agents confirmed to the Plaintiffs that rental information, rental applications, and other rental services were available at the on-site office.  Defendants' rental services at the Property office are not accessible.  Defendants' path of travel from the sidewalk to the office is not accessible since it has excessive slopes without handrails, uneven surfaces, and step changes in level along the path.  Defendant's callbox is located too high to be accessible.  Defendants do not provide the required directional signage as to the designated path of travel from the sidewalk to Defendant's office.  Defendant's office entrance is not accessible due to a significant step change in level at the office door threshold that is not beveled or ramped.  Additionally, Defendant's office entry door operating hardware is a push button knob.  The Named Individual Plaintiff uses a wheelchair for mobility and these step changes in level, excessive slopes, and the other stated issues cause the path of travel and the office entry to be not accessible.  Defendants failed to provide any directional signage indicating an alternate accessible path of travel to the office.  Defendants provide "Future Resident" parking but no disabled parking.  Defendants failed to provide the required fully compliant van accessible disabled parking for the office.   Defendants failed to provide a dimensionally compliant van accessible disabled parking space and disabled parking access aisle, the required disabled parking signage, including tow away signage, fine signage, ground markings, and failed to locate said parking on a level surface and nearest the office.   Defendants also failed to

provide compliant tow away signage. The Named Individual Plaintiff requires the use of a compliant van accessible disabled parking space to safely exit and re-enter the vehicle.   Defendants' failure to provide the required compliant disabled parking, disabled parking access aisle, disabled parking disability signage, access aisle, and disability ground markings, such that the Named Individual Plaintiff is not able to safely park at Defendants' establishment since the individual Plaintiff may be precluded from exiting or re-entering the vehicle if the disabled parking and disabled parking signage is not present and others park improperly.   Additionally, Defendants failed to provide the required accessible path of travel from the parking area to the office since the existing path of travel has step changes in level and slopes that exceed the maximum permitted.  Additionally, Defendants overt and obvious communication barriers were also present at the office in November, 2019, and a second time in January, 2020. Defendants failed to provide any method of text communication with their rental services and failed to publish any information as to how to initiate text communication contact. The Named Individual Plaintiff had actual knowledge of these barriers at Defendants' Property that Plaintiff intended to visit, and the Named Individual Plaintiff was deterred from accessing Defendants' rental services at the Property again in February, 2020.

## IV.    Auxiliary Aid Barriers

### A. Phone

**This matter involves effective communication via TTY.  See Exhibit A. In this case, Plaintiff Club investigated the subject apartments and found Defendants had no TTY/TDD, they had no manner of providing rental services at the manager's office despite steps leading thereto and the Internet advertising had no reasonable accommodation information.**

**Defendants advertises on the Internet, the following are the links to the advertising: apartmentguide.com, http://casacortezapartments.com/, yelp.com, rent.com, apartmentratings.com, apartmentfinder.com, apartmenthomeliving.com, forrent.com. Defendants have the right to log in, to modify the content of the advertising. Therefore, Defendants control the advertising. All of the ads contain a number to call. However, the ads do not include California Relay System number, the TTY number or any other way for a deaf person or a person with a speech condition to communicate with the Defendant regarding the rental services.**

**Having a TTY available is also essential, the cost of a TTY machine is $300-$1000 depending on what type of model you purchase. (source: Communications of the ACM May 1992 v35 n5 p80)TTYs (TDD) can be rented from US West for five dollars a month.**

### B. What is a TTY?

The teletypewriter, or TTY, is a device that lets people type back and forth using regular telephone lines.

Teletypewriters were used for many years by news organizations and businesses. These

organizations used teletypewriters to send and receive news using existing telephone lines. Other machines were directly connected to each other on private lines. In the 1960's, these teletypewriters were modified for use by deaf people. Robert Weitbrecht, a deaf physicist, designed an acoustic coupler that could convert the electrical signals coming from the TTY to activate the keys of the TTY and print the message.

The teletypewriter has been called by several names, including Telecommunication Device for the Deaf (TDD) or Text Telephone (TT). However, a national organization, Telecommunications for the Deaf, Inc. (TDI), has taken a firm stand and endorses the acronym of "TTY" to represent all text telephones.

TDI publishes a national directory and guide to resources that are available to enhance telecommunications accessibility for persons who are deaf, hard of hearing, deaf-blind, and speech impaired.

What equipment is needed for a TTY conversation and how much does it cost?
TTY equipment weighs two to five pounds and includes a three or four-row keyboard, a display for reading the typed message, a modem or modular connection, AC power, and rechargeable, replaceable batteries. It can also have a printer/auto answering machine. There are many different models and styles of TTYs for sale. Prices range from $200 to $1,000. They can be purchased from the manufacturer, catalogs, and electronics stores.

## C. Disparate Impact From The Internet Photographs

**Defendant advertises the subject property on webs sites it controls and others, including but not limited to the following websites: apartmentguide.com, http://casacortezaapartments.com/, yelp.com, rent.com, apartmentratings.com, apartmentfinder.com, apartmenthomeliving.com, forrent.com. With each of the said websites, the user controls the content of the page for the user. Therefore, the defendants control the content for each of the websites. Defendants' NSAs state the following about the property: The property was built in 1968 and has 2 stories with 44 units. The rent is approximately: 1 Bedroom $1,650 2 Bedrooms $1,895. The internet provides a wealth of information regarding the property. The internet advertises that the property has amenities that include: Adjacent to stores, Close to Tustin Market Place, Freeway Access 5 & 55, Gas Barbecues, Lush Landscaping, Spacious Floor Plans, Vertical Blinds, Pet Policy No Pets Allowed, Parking Covered 1 space, Laundry Facilities, Pool, High Speed Internet Access, Air Conditioning, Heating, Ceiling Fans, Smoke Free, Cable Ready, Dishwasher, Disposal, Granite Countertops, Stainless Steel Appliances, Microwave, Tile Floors, Crown Molding, Walk-In Closets, Balcony, Yard.**

The following are the photographs downloaded from the Internet:

5
Exhibit B



The apartments view.



The bathroom view.



The swimming pool area.



The kitchen area.

6
Exhibit B



The apartments view.



The parking view.



The laundry area.



The pool area.

Exhibit B



The BBQ area.



The apartments view.



The bedroom area. The closet area.



The bathroom area.

8
Exhibit B


The kitchen area.


The kitchen and dining area.


The dining area.


The apartments view.

9
Exhibit B

 The pool area.

 The BBQ area.

 The apartments view.

Photographs Narrative:

The Internet photographs suggest a preference for people without disabilities. The Internet picture of the living area does not provide any depiction of any access for people with disabilities. The Internet picture of the dining area does not provide any depiction of any access for people with disabilities. The Internet picture of the bedroom area does not provide any depiction of any access for people with disabilities. The Internet picture of the laundry room does not provide any depiction of any access for people with disabilities. The Internet picture of the apartments view does not provide any depiction of any access for people with disabilities. The Internet picture of the parking view does not provide any depiction of any access for people with disabilities. The Internet picture of the BBQ area does not provide any depiction of any access for people with disabilities. The Internet picture of the

closet area does not provide any depiction of any access for people with disabilities. The Internet picture of the swimming pool does not show the assistive lifting device for people with disability. The Internet picture of the kitchen area does not show how the kitchen can be modified for a person with a disability. The Internet picture of the bathroom area does not show how the bathroom can be modified for a person with a disability.

**The following photographs were obtained by the Plaintiffs at the Property:**

### 1. ACCESSIBLE ROUTE:



The path of travel with steps without access way signs.  Another path of travel had a step  with  no  way signs. Without way signs the public and residents would need to search  for the accessible entrance or presumed that there is not an accessible entrance.

### 2. PARKING:



Additionally,  the  parking  lot  had  no  accessible parking. The accessible parking is the first accessible feature that people with disabilities look for. The accessible parking must have the correct access aisle, which is 5x9 or for the van 8x9, must have the International Symbol of Accessible, must have the $250 tow away sign, must have the van accessible sign and must have the tow away sign at every parking lot entrance. Also, the parking space must be the closest to the entrance.



Additionally, the parking lot had no accessible parking. The accessible parking is the first accessible feature that people with disabilities look for. The accessible parking must have the correct access aisle, which is 5x9 or for the van 8x9, must have the International Symbol of Accessible, must have the $250 tow away sign, must have the van accessible sign and must have the tow away sign at every parking lot entrance. Also, the parking space must be the closest to the entrance.

### 3. STAIRWAYS:

 Moreover, the stairways had no color contrasting for people with eye conditions. In fact, none of the steps found had color contrasting. People with sight conditions have a problem distinguishing between colors that are very similar. If the person with a sight condition cannot distinguish between colors within the path of travel or steps the person will not be able to traverse within the environment. Color contrasting allows people with sight conditions to distinguish between objects within the environment and to enable them to safety negotiate traversing the environment.

12
Exhibit B

**V.    Attached Photographs Were Obtained At The Property**
        **The photographs attached after the signature block were obtained at the Property.**


**Dated: March 2, 2020**




        **By:**      *Sharon Riguer*

                **SHARON RIGUER,**
                **President of United African-Asian Abilities Club**

















